138 P.3d 1095 (2006)
STATE of Washington, Respondent,
v.
Paul W. LEMING, aka Leader, Appellant.
No. 32843-7-II.
Court of Appeals of Washington, Division 2.
July 11, 2006.
As Corrected July 25, 2006.
*1096 Patricia Anne Pethick, Tacoma, Thomas Edward Doyle, Hansville, for Appellant.
Monty Dale Cobb, Shelton, for Respondent.

PART PUBLISHED OPINION
HUNT, J.
¶ 1 Paul W. Leming appeals his convictions for assault in violation of a court order, second degree assault, felony harassment, and the jury's special verdict finding that these convictions involved domestic violence. He argues that (1) double jeopardy precluded these multiple convictions because both the felony harassment and the assault in violation of a court order were incidental to the second degree assault; (2) the trial court erred in failing to dismiss the felony harassment charge for lack of sufficient evidence; (3) the trial court erred in failing to find that assault in violation of a court order, the second degree assault, and the felony harassment constituted the same criminal conduct for offender score purposes; and (4) he received ineffective assistance of counsel when his attorney failed to object to the court's offender score calculation.
¶ 2 In his Statement of Additional Grounds for Review,[1] Leming also argues that (1) *1097 insufficient evidence supported his conviction for second degree assault; (2) he received ineffective assistance of counsel when his attorney failed to object to a witness's testimony; and (3) the trial court erred in refusing to admit photographic evidence.
¶ 3 Holding that Leming's felony harassment conviction violates double jeopardy and, as a result, his offender score needs recalculation, we reverse Leming's felony harassment conviction, affirm his convictions for second degree assault and assault in violation of a court order, and remand for resentencing.

FACTS

I. THE CRIMINAL ACTS
¶ 4 Leming's uncle, Terry Strom, agreed to serve divorce papers and a restraining order on Leming on behalf of Leming's wife, Leah Leming.[2] Strom and his wife, Beverly, went to Leming's home, where Strom served Leming with the papers. Strom told Leming that the papers included a restraining order.
¶ 5 The Stroms drove to the Shelton Inn, where Leah was working, and told her that they had served Leming. As they got in their car to leave the Inn, Leming pulled into the parking lot next to them. Beverly told Leming that he needed to leave because there was a valid restraining order preventing him from contacting Leah. Leming said he wanted to know what was going on because Leah was supposed to have cancelled the restraining order, saying, "[S]he's just signed her death warrant ... [S]he shouldn't have been doing this ... she knew better." Report of Proceedings (RP) at 30. Leming went into the room where Leah was working, and Beverly followed.
¶ 6 Beverly saw Leming push Leah into the bathroom wall and hit her with the folded legal papers, yelling and calling Leah names. Leming said, "I can snap you like a twig." RP at 67. Beverly told him to stop, stating that someone would call the police. As Leming left the room, Beverly heard him say, "[S]he's a dead bitch and that baby, too."[3] RP at 32. Apparently, Leah did not hear this threat.
¶ 7 Terry called the police, who arrived shortly thereafter.

II. PROCEDURE
¶ 8 The State charged Leming with assault in violation of a court order (domestic violence), fourth degree assault (domestic violence), second degree assault (domestic violence) predicated on felony harassment, and felony harassment (domestic violence).
¶ 9 At trial, there was some dispute about Beverly's exact location during Leming's assault of Leah. The State showed the jury the security video tape footage taken outside the motel room, which Beverly used during direct examination to illustrate her position outside the room. Leming did not object. Beverly also testified that she had been inside the room. Leming testified that she was not.
¶ 10 The following day, the State sought to recall Beverly as a rebuttal witness. Leming objected, arguing that Beverly would change her testimony about her exact location after she reviewed the surveillance tape. The trial court overruled the objection and allowed the State to recall Beverly. During her rebuttal testimony, Beverly stated that, upon closer review of the videotape, she realized that she had not been inside the motel room; rather, she had been standing in the doorway. Beverly testified that, from her vantage point in the doorway, she had a clear view of Leah and Leming inside the room.
¶ 11 Leming attempted unsuccessfully to offer into evidence a photo Officer Ohlson had taken of Leah, showing some of her injuries.[4] The court ruled the photo inadmissible until such time as Leming first laid a *1098 proper foundation. Thereafter, Leming did not seek to establish a proper foundation or to offer the photo into evidence again.
¶ 12 The jury found Leming guilty of all charges. The trial court dismissed the fourth degree assault conviction, count II, because the State had charged it in the alternative with Count I, assault in violation of a court order.
¶ 13 Leming's offender score was 9+. The trial court sentenced Leming to 47 1/2 months confinement for count I, assault in violation of a court order; 73 1/2 months confinement for count III, second degree assault, predicated on felony harassment; and 29 months confinement for count IV, felony harassment. At sentencing, Leming neither challenged his offender score nor argued that his convictions merged or constituted double jeopardy.
¶ 14 Leming appeals.

ANALYSIS

I. DOUBLE JEOPARDY
¶ 15 The double jeopardy clauses of the United States and the Washington Constitutions guarantee that no person shall be twice put in jeopardy, i.e., subject to multiple prosecutions or punishments for the same offense. State v. Baldwin, 150 Wash.2d 448, 453-54, 78 P.3d 1005 (2003). Leming argues that the trial court twice placed him in double jeopardy (1) when it convicted him of both assault in violation of a court order and second degree assault, counts I and III, respectively; and (2) when it convicted him of both felony harassment and second degree assault, counts IV and III, respectively. We disagree with Leming's first argument and agree with the second.

A. Standard of Review
¶ 16 We review double jeopardy questions de novo. State v. Freeman, 153 Wash.2d 765, 770, 108 P.3d 753 (2005).
¶ 17 That the Legislature specifically authorizes multiple punishments for a single offense does not necessarily violate the double jeopardy clause. In re Restraint of Burchfield, 111 Wash.App. 892, 895, 46 P.3d 840 (2002). Where a criminal act violates more than one criminal statute, the court must determine whether the Legislature intended to punish that act under both statutes. Baldwin, 150 Wash.2d at 454, 78 P.3d 1005. We follow three steps to determine whether the Legislature authorized multiple punishments for a single criminal act. Burchfield, 111 Wash.App. at 895, 46 P.3d 840.
¶ 18 First, we look to the statutory language to determine whether the Legislature specifically authorized separate punishments. Burchfield, 111 Wash.App. at 895, 46 P.3d 840. Second, if the statute is silent about whether the Legislature intended separate punishments, we apply the same evidence test to determine whether each legislatively-defined offense has an element not contained in the other. Burchfield, 111 Wash.App. at 896, 46 P.3d 840; See also Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Third, if each offense contains a separate element, we look for evidence of legislative intent to treat the crimes as one offense for double jeopardy purposes. Burchfield, 111 Wash.App. at 896, 46 P.3d 840.
¶ 19 We may also apply the merger doctrine. Under the merger doctrine, when separately criminalized conduct raises another offense to a higher degree, we presume that the Legislature intended to punish both offenses only once, namely for the more serious crime with the greater sentence. Freeman, 153 Wash.2d at 772-73, 108 P.3d 753.

B. Second Degree Assault
¶ 20 In RCW 9A.36.021, our Legislature provided several methods by which an assault can be raised to the second degree. Here, the State charged Leming with second degree assault with intent to commit felony harassment. Thus, at issue is only one method of second degree assault, defined as follows:
(1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
....

*1099 (e) With intent to commit a felony, assaults another ....
....
(2)(a) Except as provided in (b) of this subsection, assault in the second degree is a class B felony.
RCW 9A.36.021(1)(e); (2)(a) (emphasis added).
¶ 21 Felony harassment, the underlying felony raising Leming's assault of Leah to the second degree, is defined, in pertinent part, as follows:
(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury immediately or in the future to the person threatened or to any other person ...
....
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out....
....
(b) A person who harasses another is guilty of a class C felony if either of the following applies: ... (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.
RCW 9A.46.020.

C. Second Degree Assault and Assault in Violation of a Court Order: No Double Jeopardy
¶ 22 The State charged Leming with both second degree assault, Count III, and assault in violation of a court order, Count I. We apply the three-step legislative-intent analysis to these two crimes.
¶ 23 RCW 26.50.110, assault in violation of a court order, provides in pertinent part:
(1) Whenever an order is granted under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2)(a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section.
....
(4) Any assault that is a violation of an order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

1. No express statutory authorization of separate punishments
¶ 24 First, we determine whether the statutes specifically authorize separate punishments for the two crimes  second degree assault and assault in violation of a court order. Burchfield, 111 Wash.App. at 896, 46 P.3d 840. A separate statute, which we discuss in step three, shows the Legislature's implicit intent for separate punishments where a defendant has committed both second degree assault and assault in violation of a court order. Nonetheless, the plain language of the statutes defining these two crimes do not themselves expressly authorize separate punishments.

2. Different elements, not same evidence
¶ 25 Since neither statute, RCW 9A.36.021 or RCW 26.50.110, expressly authorizes separate punishments, we apply the same evidence test. Separate punishments do not constitute double jeopardy where the
two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment ... Blockburger v. United *1100 States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):
"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...."
This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes...." Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 (1975).
Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Here, each offense requires proof of an element that the other does not, thus, meeting the Blockburger test.
¶ 26 In order to prove assault in violation of a court order, the State had to prove that Leming (1) had knowledge of the order, (2) knowingly violated the order, and (3) assaulted Leah within the meaning of RCW 26.50.110(4), which did not amount to first or second degree assault. In order to prove second degree assault as charged, the State had to prove that Leming assaulted Leah with intent to commit felony harassment. But to prove the felony harassment component of second degree assault under the facts here, the State did not have to prove that Leming knowingly violated a court order. Rather, it had to prove that Leming harassed Leah by threatening to kill her. RCW 9A.46.020(1)(a)(i) and (2)(b). The same evidence test shows that the Legislature has treated these two crimes separately.

3. Legislative intent to punish two crimes separately
¶ 27 The same evidence test, however, is not always dispositive. Burchfield, 111 Wash.App. at 897, 46 P.3d 840. We must first confirm that the Legislature intended to punish these two crimes separately.
¶ 28 In promulgating the Domestic Violence Protection Act, Title 26.50 RCW, the Legislature expressly stated that "[a]ny proceeding" under the Act is "in addition to other civil or criminal remedies." RCW 26.50.210. The statutes criminalizing assault in violation of a court order and second degree assault are located in different chapters of the Revised Code of Washington: Second degree assault is located in Title 9A of the Washington Criminal Code, RCW 9A.36.021(1)(e); assault in violation of a court order is located outside the criminal code in Title 26.50 of the Domestic Violence Protection Act (the Act), RCW 26.50.110. Assault in violation of a no-contact order is a "proceeding" under the Act; thus, punishment for such a violation is "in addition to other... criminal remedies," RCW 26.50.210, namely punishment for second degree assault under RCW 9A.36.021(1)(e).[5]
¶ 29 In addition, the Legislature has further protected domestic violence victims by increasing the punishment for violation of a court order when, like here, that violation is based on an assault. Such an assault increases the danger to the victim beyond that involved in the act of contacting the victim in violation of the court order. Former RCW 10.99.040(4)(b), .050(2);[6]see also State v. Ward, 148 Wash.2d 803, 810, 64 P.3d 640 (2003). Thus, the Legislature has increased the punishment for assault in violation of court order to a class C felony, which assault, if not coupled with the court-order violation, would be a gross misdemeanor. RCW 26.50.110(4). In this manner, the Legislature has implicitly expressed its intent to punish separately the two crimes at issue here.
¶ 30 As Division One of our court has recently explained in an analogous case,

*1101 The constitutional protection against double jeopardy is not offended if the legislature intends cumulative punishments for two or more offenses. At issue here is whether the legislature intended to punish separately both felony violation of a no-contact order and third degree assault, where the former crime is based, in part, on the latter. Because legislative intent clearly indicates that separate punishments for violations of these two criminal statutes were intended, we hold that there is no double jeopardy violation.
State v. Moreno, 132 Wash.App. 663, 132 P.3d 1137, 1139 (2006) (footnote omitted). Similarly, we hold here that the Legislature intended to punish separately both assault in violation of a no-contact order and second degree assault.
¶ 31 Accordingly, we hold that these separate charges and punishments do not constitute double jeopardy.

D. Felony Harassment and Second Degree Assault: Double Jeopardy
¶ 32 Leming next argues that he was unlawfully placed in double jeopardy when the jury convicted him of both felony harassment and second degree assault because the felony harassment conviction was incidental to the second degree assault conviction. We agree.
¶ 33 RCW 9A.46.020, which governs felony harassment, provides in pertinent part:
(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
....
(iii) To subject the person threatened or any other person to physical confinement or restraint; or
(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
(2) (a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.
(b) A person who harasses another is guilty of a class C felony if either of the following applies: (i) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; or (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.
(Emphases added.)

1. No express authorization of separate punishments
¶ 34 The two statutes governing felony harassment and second degree assault, RCW 9A.46.020 and RCW 9A.36.021, respectively, do not contain specific provisions expressly authorizing separate punishments for the same conduct. See, e.g. Burchfield, 111 Wash.App. at 896, 46 P.3d 840. Thus, we turn to the same evidence test.

2. Same evidence test
¶ 35 The State charged that Leming committed felony harassment by "knowingly and without lawful authority, did threaten to kill another immediately or in the future, and by words or conduct placed the person threatened... in reasonable fear that the threat would be carried out...." Clerk's Papers (CP) at 59. To prove felony harassment, the State had to prove that Leming (1) threatened to kill Leah and (2) that she feared he would carry out the threat.
¶ 36 The State also charged that Leming committed second degree assault, alleging that "with intent to commit a felony, to wit: FELONY HARASSMENT, [Leming] did assault another person...." CP at 58. To *1102 prove second degree assault, the State had to prove that Leming assaulted Leah by intending to place her in fear that he would carry out his threat to kill her.
¶ 37 In short, the State had to prove the same facts for both crimes, namely that Leming committed felony harassment. It relied on the same evidence to prove both  Leming's threat to snap Leah's neck and her fear that he would carry out the threat. Thus, under the same evidence test, the convictions were the same in fact and in law. See, e.g. Freeman, 153 Wash.2d at 777, 108 P.3d 753 (We do not consider the criminal elements in the abstract to determine whether each statute requires proof of a fact that the other one does not.).
¶ 38 We hold, therefore, that, as charged, these two convictions, felony harassment and second degree assault predicated on the same acts of felony harassment, subjected Leming to multiple punishments for the same offense and, therefore, violated his state and federal constitutional rights to be free from double jeopardy.[7]See In re Restraint of Orange, 152 Wash.2d 795, 820, 100 P.3d 291 (2004) (double jeopardy is violated when "the evidence required to support a conviction upon one of the [charged crimes] would have been sufficient to warrant a conviction upon the other") quoting State v. Reiff, 14 Wash. 664, 667, 45 P. 318 (1896).

II. MERGER
¶ 39 In a related argument, Leming contends that the merger doctrine precludes his convictions for both second degree assault and (a) assault in violation of a court order and (b) felony harassment.
¶ 40 The merger doctrine applies when the degree of one offense is raised by conduct that the Legislature has separately criminalized. Freeman, 153 Wash.2d at 772-73, 108 P.3d 753.
The merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).
Freeman, 153 Wash.2d at 777-78, 108 P.3d 753 (quoting State v. Vladovic, 99 Wash.2d 413, 420-21, 662 P.2d 853 (1983)). Where the merger doctrine applies, we presume that the Legislature intended to punish both crimes by prescribing a single, greater sentence for the greater offense.
¶ 41 In Freeman, for example, our Supreme Court held that second degree assault merged with first degree robbery where, in order to prove first degree robbery, the State had to prove that the defendant committed assault in furtherance of that robbery. 153 Wash.2d at 778, 108 P.3d 753. Without the additional assaultive conduct, the defendant would have been guilty of only second degree robbery; with the assault, however, the convictions merged. Freeman, 153 Wash.2d at 778, 108 P.3d 753.

A. Second Degree Assault and Assault in Violation of a Court Order
¶ 42 We disagree with Leming that the merger doctrine precludes his convictions for both second degree assault and assault in violation of a court order.
¶ 43 In contrast with Freeman, supra, the State did not need to prove that Leming committed second degree assault in order to prove assault in violation of a court order. On the contrary, by statutory definition, in order to convict Leming of assault in violation of a court order, the State had to prove an assault that did not amount to first or second degree assault.
¶ 44 Moreover, the gravemen of assault in violation of a court order is the defendant's *1103 act of violating the order by approaching the victim, coupled with a lesser degree of assault, or conduct that creates a risk of, but does not amount to, a more serious assault. RCW 26.50.110(4).[8]
¶ 45 Here, Leming completed the charged crime by going to Leah's workplace in violation of the court order that prohibited him from contacting her and by pushing her and hitting her with the folded legal papers, which actions did not amount to first or second degree assault. RCW 26.50.110(4). Thus, Leming completed the assault in violation of a court order before he threatened to "snap [her] like a twig," the additional, harassing conduct that constituted the separate second degree assault count.
¶ 46 Accordingly, we hold that the merger doctrine does not apply to second degree assault and assault in violation of a court order as charged and proved here. See State v. Louis, 155 Wash.2d 563, 571, 120 P.3d 936 (2005) (the merger doctrine did not apply to convictions for simultaneous kidnapping and robbery because proof of kidnapping was not necessary in order to prove robbery).

B. Second Degree Assault and Felony Harassment
¶ 47 Having held that Leming's convictions for second degree assault and felony harassment violate the state and federal double jeopardy clauses, we do not separately address whether the merger doctrine applies to these two offenses.
¶ 48 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] RAP 10.10.
[2] We use first names for clarity where necessary. We intend no disrespect.
[3] Leming and Leah have a young child together.
[4] According to Leah, Officer Ohlson took the photograph to show red marks on her shoulder, neck, and jaw. But the photo showed marks on only her jaw. It appears that Leming sought to introduce the photograph to impeach Leah and to show that she did not suffer the injuries she claimed.
[5] The Legislature's express exclusion of first and second degree assaults from RCW 26.50.110(4) further illustrates its intent to allow separate punishment for such higher degrees of assault in addition to punishment under RCW 26.50.110 for lesser degree assaults committed in violation of a no-contact order.
[6] Recodified in Laws of 2000, ch. 119, § 18 as RCW 26.50.110(4).
[7] Accordingly, our analysis ends here, and we need not address legislative intent. Quoting from our Supreme Court, we further note, however,

As we have said, the prosecutor should not be denied the right to charge the separate offenses, for he may fail to persuade the jury that the greater offense was committed, while succeeding in proving the ancillary crimes. There is no reason to deprive him of this opportunity.
State v. Johnson, 92 Wash.2d 671, 680, 600 P.2d 1249 (1979).
[8] At the very least, the State needed to prove that Leming committed fourth degree assault against Leah. RCW 9A.36.041(1) provides: "A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another," in other words, an assault committed with a non-deadly weapon.