IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32054-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED |
| | ) | IN PART |
| STEVEN FLOYD OLSEN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — RCW 26.50.110(4) increases the penalty for an assault violation of a no-contact order from a misdemeanor to a felony when the assault does not amount to first or second degree assault or when the conduct is reckless and creates a substantial risk of death or physical injury to another person. A jury convicted Steven Olsen of second degree assault and felony violation of a court order after he nearly cut his girlfriend with a large hunting knife and then beat her over the head, back, and side with a baseball bat. On appeal, he contends that his conviction for felony violation of a court order must be reversed because under the plain language of RCW 26.50.110(4), a conviction of second degree assault precludes a conviction for felony violation of a court order. We disagree. Mr. Olsen focuses only on one of two options of committing felony

violation of a court order. We hold that a second option contained in RCW 26.50.110(4) permits a jury to convict a defendant for felony violation of a court order, despite having also convicted the defendant of second degree assault, when the former is predicated upon reckless conduct that creates a substantial risk of death or serious bodily injury to another. We therefore affirm.

## FACTS

Mr. Olsen and Terri Wortham began arguing in the early morning hours of August 11, 2013. The argument turned physical when Mr. Olsen, much larger and stronger than Ms. Wortham, pounced on her and pinned her to her bed. Mr. Olsen held a large hunting knife in his hand. But because of how he held the knife, and perhaps due also to his equivocal efforts, he only scratched her neck with the dull side of the blade. Ms. Wortham grabbed an aluminum baseball bat that was next to her bed and hit Mr. Olsen in the face. This caused Mr. Olsen to become extremely angry. As Ms. Wortham struggled to her feet, Mr. Olsen wrestled the bat from her. He then swung the bat and hit Ms. Wortham on the back of her head. Ms. Wortham tried to escape and began running down the hallway. Mr. Olsen followed her with the bat and struck her three times on the back and side. The struggle continued, and Mr. Olsen pushed Ms. Wortham back to her bedroom, also dragging her by her hair. In the bedroom, Mr. Olsen again struck her with

2

the bat on the top of her head. Sometime during these strikes, Ms. Wortham briefly lost consciousness. She awoke in her bedroom with Mr. Olsen standing over her. Eventually, Ms. Wortham escaped and obtained medical care. Her injuries required 3 staples on the back of her head, 2 staples on the top of her head, and 12 stitches in her lip. At the time of the attack, Mr. Olsen and Ms. Wortham were living together, despite a no-contact order in effect between the two.

The State charged Mr. Olsen with one count of second degree assault (domestic violence) and one count of felony violation of a court order. The State also charged an aggravating circumstance for domestic violence with one or more of the following present: (1) a pattern of ongoing abuse of the victim, (2) the abuse occurred within sight or sound of the victim's or defendant's minor children, or (3) manifest, deliberate cruelty or intimidation of the victim by the defendant.

Prior to trial, the court held a preliminary hearing on whether evidence of Mr. Olsen's prior bad acts of abuse should be excluded. After taking the testimony of Ms. Wortham, the trial court ruled that the evidence of prior conduct was relevant to the charged aggravator, but would also interfere with Mr. Olsen's right to a fair trial. For that reason, the court bifurcated the aggravating factor from the trial. The court said it would allow testimony regarding prior bad acts at a supplemental hearing on a finding of guilt.

At trial, Ms. Wortham testified to the events that occurred on August 11. The State questioned Ms. Wortham about the no-contact order against Mr. Olsen that was in effect on August 11. Ms. Wortham testified that she was aware of the no-contact order because there was an "incident that happened," and they were not supposed to be talking to each other. Report of Proceedings (RP) (Oct. 9, 2013) at 97. She also said that despite the no-contact order, they were living together to try to work things out. Ms. Wortham described her relationship with Mr. Olsen as off and on for a period of three years.

On cross-examination, defense counsel questioned Ms. Wortham about the couple's periods of living together and apart. Defense counsel asked Ms. Wortham where Mr. Olsen was living at the time of the couple's second break up. Ms. Wortham did not give a clear answer as to the location, but said that the breakup occurred in December 2012 on Mr. Olsen's birthday. Defense counsel then asked what happened on Mr. Olsen's birthday in 2012, and Ms. Wortham stated, "I had him—I kicked him out of the house, out of where I was living at. And he came back, and there was a fight there in the front yard. He kicked me in the stomach that time." RP (Oct. 10, 2013) at 19.

Defense counsel did not ask any follow-up questions about the front yard fight, but continued to ask about the relationship. When counsel asked Ms. Wortham about the number of times the couple split, she answered, "Probably four or five. I don't know.

4

There's too many[.] We'd get together and then we'd fight and break up." RP (Oct. 10, 2013) at 20.

On redirect, the State asked Ms. Wortham about her testimony regarding the multiple breakups. Ms. Wortham said that the reason for the breakups was fighting, arguing, and name calling. When asked by the State to be more specific about "fighting," Ms. Wortham stated that the fights would start out with words and then they would push each other. Mr. Olsen objected to this testimony, stating that questioning was beyond the scope of cross-examination and a violation of the order in limine. The trial court overruled the objection. Ms. Wortham continued to describe the fighting, saying that once Mr. Olsen slapped her and once she kicked at him. She described the fighting as always physical and mental.

Then, the State specifically asked about the front yard fight that Ms. Wortham mentioned during defense questioning. Ms. Wortham provided details about the reason for the fight, Mr. Olsen's specific violent acts, and the witnesses present. She said, "I wanted him to leave. And he needed some papers or something. And I went to hand him this—this envelope that I had his papers in, and he ended up grabbing my hair. And the lady—the girl next door, Heidi, came over. And I was trying to hide behind her because she was bigger, but he ended up getting me and pushing me down, and her too. And he

5

grabbed me by my hair." RP (Oct. 10, 2013) at 55. Ms. Wortham testified that this assault occurred in late June or early August.

Before closing arguments, Mr. Olsen moved to dismiss count 2, felony violation of a court order. Mr. Olsen, focusing on the *first* option for committing felony violation of a court order, argued that RCW 26.50.110(4) prohibited second degree assault as being used as the predicate for felony violation of a court order. Mr. Olsen contended that the State presented sufficient evidence of second degree assault, so he could not be convicted of the felony violation. The court denied the motion on the grounds that the *second* option for committing felony violation of a court order was engaging in reckless conduct that created a substantial risk of death or serious physical injury to another.

Consistent with this ruling, the jury instructions allowed convictions for both felony offenses. The jury was given two sets of elements for felony violation of a court order count. The jury was instructed that the second set of elements applied if it found Mr. Olsen guilty of second degree assault. This second set of elements contained the reckless conduct option, requiring the State to prove beyond a reasonable doubt "[t]hat the [court order] violation consisted of conduct which was reckless and which created a substantial risk of death or serious physical injury to another." Clerk's Papers at 45. This

instruction did not allow the jury to consider second degree assault to support the conviction.

The jury found Mr. Olsen guilty of assault in the second degree and felony violation of a no-contact order. Implicitly, the jury found that Mr. Olsen's violation of the no-contact order was reckless and created a substantial risk of death or serious physical injury to another.[1] Later, the trial court dismissed the domestic violence aggravator, in part finding that the evidence was not enough to create a pattern of abuse.

---

[1] The reckless conduct that supported the jury's conviction could have been Mr. Olsen repeatedly hitting his girlfriend on her head, back, and side with the bat. Neither party proposed a unanimity instruction that would assist us in knowing for certain which act supported which conviction nor has Mr. Olsen raised this issue on appeal.

In *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), our Supreme Court held that a trial court must give a unanimity instruction to ensure that a jury reaches a unanimous verdict on one particular incident. This rule applies where the acts are multiple distinct acts. *Id.* at 571. The rule does not apply where the evidence indicates a continuing course of conduct, e.g., acts occurring near the same time and place between the same aggressor and victim *and that are intended to secure the same objective. See State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). In such a situation, there is only one chargeable offense.

Here, Mr. Olsen does not argue that there is only one chargeable offense. Indeed, if Mr. Olsen's objective changed during the attack, more than one chargeable offense did occur. Here, the much larger and stronger Mr. Olsen barely scratched his girlfriend with the dull side of a hunting knife. But after his girlfriend hit him in the face with the aluminum bat, he became very angry, wrestled the bat away, and repeatedly hit her with it on her head, back, and side thus risking serious injury to her. Whereas the initial objective may have been only to scare his girlfriend, this objective changed to physically hurting her.

Pursuant to RCW 9.94A.589(1)(a), the court imposed concurrent sentences on the two current offenses. The State conceded that because the convictions stemmed from the same criminal conduct, neither current offense could be used for calculating the offender score for the other current offense. The court imposed concurrent sentences within the standard range for each offense—13 months for second degree assault and 9 months for felony violation of a court order. Mr. Olsen appeals.

## ANALYSIS

Mr. Olsen contends that his conviction for felony violation of a court order must be reversed because under the plain language of RCW 26.50.110(4), a conviction of second degree assault precludes a conviction for felony violation of a court order. The State disagrees and argues that RCW 26.50.110(4) provides two separate ways of committing the offense: either by an assault that does not amount to first or second degree assault (the "assault option"), or by conduct that is reckless and creates a substantial risk of death or serious bodily injury to another person (the "reckless conduct option"). The State argues that the jury found Mr. Olsen guilty under the reckless conduct option, as illustrated by the jury instructions. This is the first instance where Washington courts have addressed whether a person can be convicted of second degree assault and felony violation of a court order based on the reckless conduct option. To answer the question

8

presented, we look to the language of the statute. Plain language that is not ambiguous does not require construction. *State v. Azpitarte*, 140 Wn.2d 138, 142, 995 P.2d 31 (2000) (deriving the meaning of the assault option portion of RCW 26.50.110(4)(a) from the language itself because the language is unambiguous).

Under RCW 26.50.110(1)(a), a knowing violation of a protection or no-contact order is a gross misdemeanor except as provided in subsections (4) and (5). Applicable here is RCW 26.50.110(4):

> Any assault that is a violation of an order issued under this chapter . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, *and* any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

(Emphasis added.)

We agree with the State that the plain language of RCW 26.50.110(4) provides two circumstances that elevate a violation of a no-contact order to a class C felony. The offense can be elevated to a class C felony by (1) any assault in violation of a no-contact order that does not amount to first or second degree assault, *and* (2) any conduct in violation of a protection order that is reckless and creates a substantial risk of death or serious physical injury to another person.

9

The Washington Supreme Court has twice held that if a defendant is charged and convicted of first or second degree assault, that conviction "'cannot serve as the predicate to make the violation a felony.'" *State v. Ward*, 148 Wn.2d 803, 812, 64 P.3d 640 (2003) (quoting *Azpitarte*, 140 Wn.2d at 141). In *Azpitarte*, the court set aside the felony verdict because the instructions permitted the jury to use the second degree assault as a predicate for a felony violation of court order verdict. *Azpitarte*, 140 Wn.2d at 142. Here, however, the second degree assault conviction did not serve as the predicate to make the court order violation a felony. Rather, the jury was properly instructed and found that the State proved beyond a reasonable doubt that Mr. Olsen's violation of the no-contact order was reckless and created a substantial risk of death or serious bodily harm to another.

In *State v. Leming*, 133 Wn. App. 875, 891, 138 P.3d 1095 (2006), a jury convicted Mr. Leming of (1) felony violation of a court order based on his assault of the victim by pushing her and hitting her with folded papers, which did not amount to first or second degree assault, and (2) second degree assault based on his subsequent conduct of threatening to "'snap [her] like a twig.'" In analyzing whether double jeopardy was violated by punishing conduct twice, the *Leming* court applied the three-step legislative intent analysis of *In re Personal Restraint of Burchfield*, 111 Wn. App. 892, 895, 46 P.3d 840 (2002). *Leming*, 133 Wn. App. at 882; *but see Azpitarte*, 140 Wn.2d at 142 (assault

10

option language of RCW 26.50.110(4) is unambiguous, and lower court's analysis of legislative intent was unnecessary). The *Leming* court determined that parts two and three of the test—different elements/not same evidence, and legislative intent to punish two crimes separately—supported punishing both offenses separately. Based upon this three-part test, the court concluded that the separate charges and punishments for both assault in violation of a no-contact order and second degree assault did not violate double jeopardy protections, even if one conviction was based, in part, on the other. *Leming*, 133 Wn. App. at 887.

The *Leming* court also held that the crimes did not merge as charged because felony violation of the court order was not dependent on proving the crime of second degree assault. *See id.* at 890-91. The court reasoned that the State did not need to prove that Mr. Leming committed second degree assault to prove assault in violation of a court order. *Id.* at 891. "On the contrary, by statutory definition, in order to convict Leming of an assault in violation of a court order, the State had to prove an assault that did not amount to first or second degree assault." *Id.*

Although *Leming* addressed the assault option of RCW 26.50.110(4) and not the reckless conduct option, *Leming* establishes that a conviction for second degree assault does not automatically preclude a conviction for felony violation of a court order.

11

Provided that the felony violation of a court order is not predicated on the second degree assault, a person can be convicted of both offenses.

Here, Mr. Olsen's conviction for second degree assault does not preclude his conviction for felony violation of a court order. His conviction for felony violation of a court order was not predicated on his conviction for second degree assault. Rather, the State relied upon the reckless conduct option to elevate the violation of the no-contact order to a felony, and it was on this basis that the jury rendered its verdict.

We affirm the jury's verdict.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Mr. Olsen contends that the trial court abused its discretion by admitting highly prejudicial evidence of his prior assaultive behavior, despite his objections. He maintains that admitting the evidence violated the court's own pretrial ruling and its duty to conduct a hearing under ER 403 and ER 404(b). The State counters that Mr. Olsen opened the door to this testimony by questioning the witness about the nature of her relationship with Mr. Olsen.

12

A trial court's rulings on evidentiary issues and motions in limine are reviewed for an abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). A trial court abuses its discretion by issuing a decision that is manifestly unreasonable or based upon untenable grounds or reasons. *Id.*

Under ER 404(b), evidence of other crimes, wrongs, or acts by the defendant are not admissible to show that it is likely the defendant committed the alleged crime, acted in conformity with the prior bad acts when committing the crime, or had a propensity to commit the crime. The trial court has a duty to define the purpose of ER 404(b) evidence and perform a balancing test on the record prior to allowing it into evidence. *State v. Wade*, 138 Wn.2d 460, 463, 979 P.2d 850 (1999).

"Opening the door" is a doctrine that applies to whether otherwise inadmissible evidence may become admissible due to the other party's questioning. *State v. Jones*, 144 Wn. App. 284, 298, 183 P.3d 307 (2008). The effects of opening the door can be triggered in two ways "'(1) a party who introduces evidence of questionable admissibility may open the door to rebuttal with evidence that would otherwise be inadmissible, and (2) a party who is the first to raise a particular subject at trial may open the door to evidence offered to explain, clarify, or contradict the party's evidence.'" *Id.* (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14

13

No. 32054-5-III
*State v. Olsen*

at 66-67 (5th ed. 2007)).  A mere passing reference in response to a question does not

"open the door" to additional questions about prior bad acts on the part of the defendant.

*See State v. Stockton*, 91 Wn. App. 35, 40, 955 P.2d 805 (1998).

We agree with Mr. Olsen that the trial court abused its discretion by admitting

evidence of his prior bad acts.  The trial court's motion in limine specifically excluded

this type of past assault testimony from the trial.  That order was supported by the trial

court's own well-reasoned determination.  The evidence of prior physical altercations

between Mr. Olsen and Ms. Wortham was evidence of prior bad acts that should have

been excluded.

Mr. Olsen did not open the door to this testimony through the questioning of Ms.

Wortham.  Defense counsel asked about the on-and-off nature of the relationship, but did

not ask about any physical altercations in the relationship.  Nor did defense counsel invite

Ms. Wortham's testimony regarding a fight in the front yard.  Defense counsel simply

asked what happened on Mr. Olsen's birthday in December.  Ms. Wortham testified that

she kicked Mr. Olsen out on that day and then offered information about a physical fight

that later occurred in the front yard.[2]  Defense counsel did not probe into this passing

---

[2] We cannot conclude that Ms. Wortham's reference to the front yard assault was to be expected as a result of defense's question regarding the events in December. According to Ms. Wortham's later testimony, the front yard assault happened in late June

14

reference. Thus, defense questioning did not open the door to the State's examination into the front yard fight between Mr. Olsen and Ms. Wortham. Because Mr. Olsen objected to this testimony, the trial court abused its discretion in admitting the evidence.

While the trial court abused its discretion, the error did not materially affect the outcome of the trial. "'An evidentiary error which is not of constitutional magnitude, such as erroneous admission of ER 404(b) evidence, requires reversal only if the error, within reasonable probability, materially affected the outcome.'" *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002) (quoting (*State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997)). Here, the discussion of previous physical fights between Mr. Olsen and Ms. Wortham probably did not affect the jury's decision that Mr. Olsen committed felony violation of a court order. Overwhelming evidence established that Mr. Olsen's conduct created a substantial risk of death or serious bodily injury to Ms. Wortham on August 11, 2013. Testimony and pictures presented at trial established that Mr. Olsen repeatedly hit Ms. Wortham with a baseball bat and caused her to have multiple stitches and staples in her head. Also, a witness testified that Ms. Wortham was covered in blood. Considering the strength of this

---

or early August.

evidence, the erroneous admission of Mr. Olsen's prior bad acts probably did not affect the outcome of the jury's verdict for felony violation of a court order.

Affirm.

_Lawrence-Berrey, J._
Lawrence-Berrey, J.

WE CONCUR:

_Siddoway, C.J._
Siddoway, C.J.

_Korsmo, J._
Korsmo, J.