IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 40778-1-III |
| | ) | |
| | ) | |
| PETRU HOADREA JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

HILL, J. — Petru Hoadrea fired a warning shot after telling his neighbors, Jack and Elaine Simmons, to get off what he believed was his property. A jury later convicted him of two counts of assault in the second degree while armed with a firearm, one count of unlawful aiming or discharge of a firearm, two counts of harassment, and one count of assault in violation of a protection/no-contact order while armed with a firearm. We affirmed these convictions on appeal. *State v. Hoadrea*, No. 38350-9-III (Wash. Ct. App. June 22, 2023) (unpublished), https:// www.courts.wa.gov/opinions/pdf/383509_unp.pdf.

Hoadrea now files this personal restraint petition seeking relief from errors he believes occurred before, during, and after trial. Despite the significant number of errors Hoadrea alleges, we deny his petition for relief.

BACKGROUND

Petru Hoadrea shared a property line with Jack and Elaine Simmons, but he disagreed with them on the line's location. The disagreement escalated, and Ms. Simmons obtained a no-contact order against Hoadrea. Not long after, law enforcement arrested Hoadrea for violating the no-contact order and for taking the Simmonses' fence posts.

After his release from jail in mid-May 2020, Hoadrea saw Mr. Simmons constructing a fence on the disputed property line and Ms. Simmons sitting on a four-wheeler nearby. Hoadrea yelled at the Simmonses to get off his property. Ms. Simmons responded that they had the right to be there. Hoadrea threatened to fire a warning shot if the Simmonses did not leave. He then fired a shot from his .22 revolver, allegedly in the Simmonses' direction. Hoadrea told the Simmonses that the next shot would be closer.

Hoadrea and Ms. Simmons called 911, and Deputy Travis Feldner from the Stevens County Sheriff's Office responded to the call. After he spoke with the Simmonses, Deputy Feldner obtained a warrant to search Hoadrea's home. Deputies seized the .22 revolver, ammunition, and 14 other firearms.

The State charged Hoadrea with two counts of assault in the second degree while armed with a firearm, one count of unlawful aiming or discharge of a firearm, two counts of harassment, and one count of assault in violation of a protection/no-contact order while armed with a firearm. A jury found Hoadrea guilty on all counts, and the court sentenced

him to 104 months confinement. Hoadrea appealed, we affirmed, and our Washington

State Supreme Court declined further review.

Hoadrea has now filed this petition asserting numerous errors for our review under

RAP 16.4(c)(2) and (3). He alleges multiple violations of his right to effective assistance

of counsel, impermissible comments by the trial court, prosecutorial misconduct, and

several sentencing errors.

## State's Motion to Strike

Before we reach the merits of these alleged errors, the State directs us to portions

of Hoadrea's exhibits that the State argues contain inadmissible hearsay and irrelevant

information. The State asks us to strike this material from the record, along with the

portions of Hoadrea's petition that rely on it. Hoadrea responds that the State's motion is

procedurally improper under RAP 16.8.1(b), 16.8.1(d), 16.9, and 16.10(b) and that even

if the motion was proper, the disputed evidence should not be struck.

The State's motion to strike is procedurally proper. If a petitioner relies on

matters outside the existing record, the petitioner must set forth competent and admissible

evidence to establish the material facts. *In re Pers. Restraint of Rice*, 118 Wn.2d 876,

886, 828 P.2d 1086 (1992). Hearsay is inadmissible and cannot serve as the basis for

granting a reference hearing or other relief. *In re Pers. Restraint of Moncada*, 197 Wn.

App. 601, 607, 391 P.3d 493 (2017). Irrelevant evidence is also inadmissible. ER 402.

When a petitioner submits inadmissible evidence in support of a personal restraint

petition, be it hearsay or irrelevant evidence, the State may file a motion to strike the

offending portions, and the court will address each argument. *See In re Pers. Restraint of*

*Pirtle*, 136 Wn.2d 467, 479, 965 P.2d 593 (1998).

We address each of the State's contentions, striking portions of Hoadrea's exhibits

and leaving the rest.

*Exhibit 4: Declaration of Petru Hoadrea*

The State objects to the following portions of Hoadrea's declaration on relevancy

grounds:

10. However, despite what he told me, [the property dispute attorney] was not following through with any of his promises. For example, he promised to file the land survey I had completed, but failed to do so. Also, he said he would petition to obtain an anti-harassment order to protect me, but [the property dispute attorney] delayed, and Elaine Simmons was able to obtain an order against me first;

11. Over a period of several months, while I thought [the property dispute attorney] was acting to protect me and my property, Jack and Elaine Simmons continued to maliciously trespass on my property; typically, while openly carrying firearms;

12. Having not received the help I was promised and seeing no progress with my case, I met with [the property dispute attorney] in the spring of 2020 and asked him what I was supposed to do in response to the continuous trespasses;

13. I specifically asked [the property dispute attorney] how I could protect myself and my property given that Mr. and Mrs. Simmons were becoming more and more aggressive. I asked [the property dispute attorney] if I could fire a warning shot to protect myself and my property. [The property dispute attorney] responded that I "would be within my rights" if I did so;

4

Second Amend. PRP and Opening Br. (PRP), Ex. 4 at 2-3.

While these statements may provide background or context to the case, they are irrelevant for purposes of this PRP. We strike the above portions of Hoadrea's declaration and any arguments relying on them.

The remainder of the State's objections are primarily on hearsay grounds. We continue with Hoadrea's declaration.

> 14. When I fired the single warning shot on May 19, 2020, I did so because [the property dispute attorney] told me I was within [my] rights to do so;

PRP, Ex. 4 at 3.

Hoadrea argues that his property dispute attorney's statement is not hearsay because it is offered to demonstrate Hoadrea's state of mind rather than its truth. ER 803(a)(3). We agree this statement would be admissible to show Hoadrea's state of mind but conclude it is not relevant for purposes of this PRP. Therefore, we strike this portion of Hoadrea's declaration and any arguments relying on it.

Hoadrea's declaration continues:

> 16. . . . [The first trial attorney] said he was investigating my explanation of what had happened and the events leading up to firing of the warning shot;
> 17. . . . [The first trial attorney] told me that I "shouldn't plead guilty to anything because I did nothing wrong."

PRP, Ex. 4 at 3-4.

Hoadrea contends that his first trial attorney's statements are not hearsay because they are offered to "contextualize" why Hoadrea did not engage in plea negotiations. Pet'r's Resp. Opposing Mot. to Strike, *In re Pers. Restraint of Hoadrea*, No. 40778-1-III, at 9 (Wash. Ct. App. Mar. 21, 2025). We agree that these statements are admissible for this purpose. The State's motion to strike these statements from Hoadrea's declaration is denied.

Furthermore, the declaration claims:

> 20. . . . [The second trial attorney] snapped at me and told me she was not interested in hearing my "chauvinistic opinions about women."

PRP, Ex. 4 at 4.

This statement is not hearsay as it is not being used for the truth of the matter asserted. Instead, Hoadrea's purpose in offering this statement is to demonstrate his attorney provided ineffective assistance while preparing for trial. The State's motion to strike this statement from Hoadrea's declaration is denied.

The declaration continues:

> 27. [The second trial attorney] told me that we had to move forward with the trial and that she would ask the judge if Ms. [Maria] Braun could testify remotely;
>
> . . . .
>
> 29. . . . [The second trial attorney] advised me that I should take the stand to testify;
>
> . . . .

6

35. After the trial, Ms. Braun told me that she could hear us in the courtroom, but that she was muted and unable to inform the court that she could testify;

PRP, Ex. 4 at 6-7.

Hoadrea does not address whether these statements constitute inadmissible hearsay.  Regardless, the statements are not relevant for this PRP.  Therefore, we strike the above portions of Hoadrea's declaration and any arguments relying on them.

*Exhibit 2: Declaration of Sean Devlin*

The State challenges the following portion of the declaration:

9.   On August 7, 2024, Sean Devlin spoke with Hoadrea's second trial attorney and learned:

    a) Her memory of the representation is not complete;

    b) She has changed case management systems and does not believe she will be able to find the case file;

    c) Mr. Hoadrea's first trial attorney . . . had committed suicide;

    d) She had frequently worked with [the first trial attorney] and her opinion was he tended to overvalue his cases; and

    e) She exchanged emails with [the prosecuting attorney] after Mr. Hoadrea was incarcerated concerning the pre-trial plea offer.

PRP, Ex. 2 at 3.

We agree with the State that these statements are hearsay and Hoadrea fails to identify a non-hearsay purpose for their consideration.  These statements are also

irrelevant for purposes of this PRP. We strike these statements from Devlin's declaration and will not consider them in reaching our decision.

The declaration continues:

> 12. On September 26, 2024, the records officer informed me the records request was going to be closed. I telephoned the records officer inquiring of the recorded interview. The records officer said she would keep the request open and investigate the recording;
>
> 13. On October 9, 2024, the records officer informed me Detective Schumacher's recording did not become part of the official file.

PRP, Ex. 2 at 3-4.

These statements come from an e-mail between the records officer and counsel (exhibit 10) which we conclude is admissible for purposes of this PRP. Therefore, while the statements are hearsay, we allow them to remain for the reasons discussed below.

*Exhibit 3: Officer Reports from Deputy Travis Felder and Detective Colton Schumacher*

The State argues the officer reports from Deputy Travis Felder and Detective Colton Schumacher in petitioner's exhibit 3 are hearsay. Hoadrea contends that these reports are admissible because they are part of the record, and the individuals who made the hearsay statements are available to testify at a reference hearing.

We note that RAP 16.7 does not require Hoadrea to present evidence but only identify the existence of material evidence and where it can be found. RAP 16.7; *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 641, 362 P.3d 758 (2015). The officer's reports identify such evidence. We agree with Hoadrea that we can consider

these exhibits for purposes of this PRP as they are relevant to show the existence of a recorded interview between Detective Schumacher and the Simmonses.

*Exhibits 6 & 10: E-mails between the prosecuting attorney and Hoadrea's first trial attorney.*

Petitioner's exhibit 6 contains e-mails between the prosecuting attorney and Hoadrea's first trial attorney. Petitioner's exhibit 10 contains e-mails between Sean Devlin and the records officer. The State argues these e-mails contain inadmissible hearsay. While the e-mails do contain hearsay, we deny the State's motion to strike and will consider the e-mails for the limited purpose of showing the existence of (a) plea negotiations and (b) the existence of a recording of Detective Schumacher's interview with the Simmonses.

## ANALYSIS

We now turn to the merits of Hoadrea's petition. Hoadrea brings this PRP under RAP 16.4(c)(2) and (3), alleging constitutional errors and the existence of material facts which have not been previously presented and heard. The standard of review under a PRP is more stringent than on direct appeal. Hoadrea must "establish actual prejudice arising from a constitutional error" or present "a nonconstitutional error that constitutes a fundamental defect resulting in a complete miscarriage of justice." *In re Pers. Restraint of Davis*, 200 Wn.2d 75, 86, 514 P.3d 653 (2022). "To show actual and substantial

prejudice, a petitioner must show that the outcome would more likely than not have been different had the alleged error not occurred." *Id.* We address each alleged error in turn.

## *Brady* Violation

Hoadrea alleges the State failed to provide him with a recording of Detective Schumacher's interview with the Simmonses. Hoadrea argues this constitutes a *Brady*[1] violation that prejudiced his ability to present a defense.

The State commits a *Brady* violation when it suppresses evidence that is favorable to the accused and material to guilt or punishment, regardless of whether the prosecutor acted in good or bad faith. *In re Pers. Restraint of Mulamba*, 199 Wn.2d 488, 497, 508 P.3d 645 (2022). In order to demonstrate a *Brady* violation, the petitioner must show (1) the withheld evidence is favorable to the accused because it is impeaching or exculpatory, (2) the State either willfully or inadvertently suppressed the evidence, and (3) the petitioner was prejudiced as a result of the suppression. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011).

Prejudice exists if the evidence is material to the outcome of the trial. *Mulamba*, 199 Wn.2d at 498. Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *Id*. A mere showing that the evidence may have exonerated the defendant is not

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

sufficient. *State v. Wittenbarger*, 124 Wn.2d 467, 475, 880 P.2d 517 (1994).

Deputy Schumacher's interview with the Simmonses has never been located, but Hoadrea relies on Deputy Schumacher's "Information Report" for a summary of its contents. PRP at 22. Hoadrea contends the recording is exculpatory because it would show (1) Ms. Simmons's animosity toward Hoadrea and (2) that she was not afraid when Hoadrea shot near her husband and threatened to fire a second time. Since this information was already made available to Hoadrea through Deputy Schumacher's report, it is debatable whether the recording is exculpatory. However, even if it is, Hoadrea does not demonstrate to a reasonable likelihood that the result of the proceeding would have been different if he had the recorded interview at trial.

First, Hoadrea merely speculates that there would be additional statements in the recorded interview that would benefit his case. Hoadrea already had access to the deputy's report. The report appears to detail the relevant material from the interview, including Ms. Simmons's allegedly exculpatory statements. Despite having access to this summary, Hoadrea did not call Ms. Simmons as a witness, and he does not now allege he would have called her if he had access to the recording. Even if Hoadrea had access to the recording and called Ms. Simmons as a witness, he does not show any likelihood that the outcome of the trial would have been different if he had the recording rather than the officer's summary.

11

Second, Hoadrea argues that because Ms. Simmons made at least one insulting comment about him during the interview, there were likely more insults in the recording. Hoadrea argues he could have used these insults to demonstrate Ms. Simmons's aggressiveness and bias toward him. Again, this is speculation, but even if Ms. Simmons did make additional insulting comments about Hoadrea in the interview, the animosity between Hoadrea and the Simmonses was well-developed at trial. The existence of insulting statements would not create a reasonable probability that the outcome of the trial would have been different.[2]

## Confrontation

Hoadrea contends his confrontation rights were violated when the court admitted Ms. Simmons's statements through the 911 call, law enforcement, and Mr. Simmons. He also claims counsel was ineffective in failing to object to these alleged violations. Hoadrea concedes that this court rejected these arguments in his direct appeal. He now asks to relitigate these issues due to "newly presented evidence" and in the interests of justice. PRP at 2.

First, Hoadrea argues that there was insufficient evidence, outside of the statements introduced in violation of his confrontation rights, to establish that his gunshot

---

[2] Hoadrea also argues his attorney was ineffective for failing to seek out this recording during the pendency of his case. As we conclude the recording would not create a reasonable probability that the outcome of the trial would be different, Hoadrea cannot show prejudice even if his attorney's performance was insufficient in this regard.

placed Ms. Simmons in reasonable fear. Second, he claims that the recorded police interview with Ms. Simmons is newly presented evidence that warrants a second review of this issue. Third, he argues our citation to *State v. Burns*, 193 Wn.2d 190, 438 P.3d 1183 (2019), in his direct appeal was improper because the case does not apply to PRPs.

Generally, "[t]he petitioner in a personal restraint petition is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004). The interests of justice include an intervening change in the law, newly discovered evidence, or some other reason for failing to raise a critical argument on appeal. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013); *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 886, 952 P.2d 116 (1998).

Here, Hoadrea presents the same confrontation rights arguments that we addressed in his direct appeal, and the recorded interview does not alter our original conclusion. We also note that a defendant cannot create a new ground for review simply by recasting the same issue under the guise of ineffective assistance of counsel. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001). Hoadrea does not bring forward newly discovered evidence, and he fails to demonstrate that newly presented evidence or the interests of justice warrant a second review.

## Propensity Evidence

Hoadrea contends that defense counsel was deficient for failing to object to 14 instances of propensity evidence and for not moving the trial court to conduct an ER 404(b) analysis. The State argues that several of Hoadrea's ineffective assistance of counsel claims are barred because he made a claim for ineffective assistance of counsel on other grounds on direct review.

While petitioners are generally barred from raising an ineffective assistance of counsel claim on the same ground made on direct appeal, they are permitted to make an ineffective assistance of counsel claim on different grounds. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 688-89, 363 P.3d 577 (2015). We therefore will consider Hoadrea's new grounds for arguing he received ineffective assistance of counsel, but we decline to reconsider grounds he already raised in his direct appeal.

A claim for ineffective assistance of counsel requires a defendant to show that defense counsel's performance was deficient and prejudicial. *State v. Levy*, 156 Wn.2d 709, 729-30, 132 P.3d 1076 (2006). Counsel's performance is deficient if it is objectively unreasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). There is "'a strong presumption that counsel's performance was reasonable.'" *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). A defendant rebuts this presumption by demonstrating the existence of a legitimate tactic explaining the performance. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Prejudice

exists if there is a reasonable probability that the outcome of the trial would have been different absent the deficient performance. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 280 P.3d 1102 (2012).

Evidence of other wrongs, crimes, or bad acts is inadmissible to prove the accused's character. ER 404(b). However, such evidence may still be admissible for purposes other than showing propensity. *State v. Slocum*, 183 Wn. App. 438, 456, 333 P.3d 541 (2014). Before admitting this evidence, the trial court engages in a four-part review to determine if the evidence is admissible. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014). However, when a defendant bases his claim of ineffective assistance on counsel's failure to object to 404(b) evidence, the defendant must, in addition to his ordinary burden, show that the objection was likely to have succeeded if made. *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019).

First, Hoadrea takes issue with testimony and several exhibits related to his firearm collection. However, both parties offered considerable evidence on Hoadrea's possession and use of firearms. During closing argument, defense counsel framed the case as an issue of defense of property and the Second Amendment to the United States Constitution. In his direct appeal, Hoadrea argued his attorney was ineffective for failing to object to this evidence. We held that counsel had a reasonable tactical strategy to choose not to object. *Hoadrea,* slip op. at 13. We reject his argument here for the same reasons we stated in the direct appeal.

15

Next, Hoadrea assigns error to counsel's failure to object to Detective Frizzell's testimony that Hoadrea was a known armed individual. The detective's reference to Hoadrea as being armed referred to Ms. Simmons's 911 call where she reported that Hoadrea fired a gun, not that he was generally known in the community as being an armed individual. Hoadrea fails to demonstrate that this evidence is impermissible character evidence or that his counsel was ineffective for not objecting to it. Lastly, Hoadrea identifies testimony and questions by the State relating to his prior threats, altercations, and arrests. We will not list them all here, but we agree these instances fall under the broad definition of prior bad acts. However, these acts all involved interactions between Hoadrea and the Simmonses. In Hoadrea's direct appeal, we recognized that defense counsel agreed to introduce evidence of Hoadrea's previous interactions with the Simmonses to provide context for their later encounter. *Id.* at 23-24. These prior instances were relevant for several reasons unrelated to propensity, including to show motive, intent, bias, and mutual animosity, not just of Hoadrea, but of the Simmonses as well. *Id.* at 23. The trial court admitted the evidence and told the parties it would resolve any disputes regarding improper testimony when and if objections were made. *Id.* at 24. As we noted in Hoadrea's direct appeal, it is a sound tactical decision for trial counsel not to object to evidence that is not particularly damaging in order to avoid drawing attention to the issue. Hoadrea fails to demonstrate that the testimony violates ER 404(b) or that counsel was ineffective in failing to object.

16

Governmental Misconduct

Hoadrea contends the government committed misconduct during the trial by inciting the jury's passions and prejudices. He cites 10 instances of alleged governmental misconduct along with the 14 instances of character evidence discussed above.

Article I, section 22 of the Washington State Constitution, along with the Sixth and Fourteenth Amendments guarantee the right to a fair trial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Prosecutorial misconduct may violate a defendant's right to a fair trial. While the prosecutor is permitted to argue reasonable inferences from the evidence, they may not use arguments intended to inflame the passions or prejudices of the jury.

To support a claim of prosecutorial misconduct, the defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Once the defendant demonstrates that the prosecutor committed misconduct, they must demonstrate to a substantial likelihood that the improper conduct affected the jury's decision. The prosecution's argument must be so extreme that no curative instruction could have avoided prejudice. *State v. Killingsworth*, 166 Wn. App. 283, 291, 269 P.3d 1064 (2012).

Hoadrea first claims the prosecutor committed misconduct in the State's opening statement when she said that Hoadrea admitted during the 911 call that he fired a bullet at the Simmonses. While Hoadrea is correct that he did not admit to firing at the

Simmonses in the 911 call, Hoadrea fails to demonstrate that the statement caused actual and substantial prejudice. The jury listened to a recording of the 911 call after the statement from the prosecutor, which makes it unlikely that the comment substantially affected the jury's decision.

Second, Hoadrea claims that the prosecutor told the jury during closing arguments that Hoadrea admitted to willfully discharging a firearm in a place where a person might be in danger. The prosecutor's comments were as follows:

> The defendant actually admitted he willfully discharged a firearm. In a place where a person might be in danger. And what are the exact—I don't want to misquote, here—

Rep. of Proc. (RP) at 402. The prosecutor continued to quote the exact language of this element for the unlawful discharge count.

While Hoadrea admitted at trial that he willfully discharged the firearm, he presumably disagrees that he admitted to doing so in a place where a person might be in danger. The trial court transcript indicates that, after stating what Hoadrea admitted to, the prosecutor began a new sentence, intending to quote the next element of the unlawful discharge count. Hoadrea does not demonstrate that this statement rose to the level of prosecutorial misconduct. Even if it did, there is not a substantial likelihood that it affected the jury's decision.

Third, Hoadrea contends the prosecutor committed misconduct when asking Hoadrea if he would shoot at his grandfather during cross-examination. Hoadrea believes

this question was meant to portray him as a "violent bully of the elderly." PRP at 51.

We see it differently. The question was intended to rebut Hoadrea's testimony that he

felt there was nothing wrong with firing the warning shot, not that he was somehow

antagonistic toward a certain age demographic. Hoadrea also fails to mention that he

claimed during his direct testimony that he treated Mr. Simmons like his grandfather.

The State's question, therefore, also could have been intended to point out this

discrepancy. Regardless, Hoadrea does not demonstrate that the State's question

constitutes misconduct.

Fourth, Hoadrea argues the prosecutor's comments during closing arguments that

Hoadrea was arrested during a prior encounter and had a protection order against him

were improper. As previously discussed, the trial court allowed the parties to introduce

evidence surrounding previous interactions between each other to provide context for the

shooting. Hoadrea fails to demonstrate that this comment was improper or prejudicial.

Regarding his fifth and sixth prosecutorial misconduct arguments, Hoadrea claims

the prosecutor impermissibly commented on his right to remain silent. Specifically,

Hoadrea points to the State's questions to (a) Deputy Feldner as to whether he was able to

contact Hoadrea as part of his investigation and (b) Hoadrea on cross-examination as to

whether he refused phone contact with law enforcement.

The Fifth Amendment prohibits the State from using a defendant's prearrest

silence as substantive evidence of guilt. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1

(2008). Courts distinguish between mere references and comments on the defendant's silence. *State v. Lewis*, 130 Wn.2d 700, 706, 927 P.2d 235 (1996). The State makes a comment on silence when it uses silence as substantive evidence of guilt or to suggest that silence was an admission of guilt.

Here, the State did not comment on Hoadrea's silence. In one instance, the State asked the deputy whether he contacted Hoadrea, which would be expected as part of the investigation. In the second instance, the State asked Hoadrea if he refused a phone call from the deputies. This question was in response to Hoadrea's testimony on direct examination that he was not trying to avoid or evade law enforcement after the shooting but had merely been sleeping when they tried to contact him. The State did not use the answers as substantive evidence of Hoadrea's guilt or suggest that his silence was an admission of guilt, nor does Hoadrea show these questions were prejudicial.

Seventh, Hoadrea contends the prosecutor deprived him of a jury determination on whether his use of force was lawful by asking Detective Frizzell whether he would have fired a warning shot in Hoadrea's position. The prosecutor asked the detective whether he, in his professional capacity, would have discharged his weapon if he were in the same geographical position as Hoadrea, emphasizing Hoadrea's proximity to the Simmonses. The State likely asked this question to demonstrate that Hoadrea's decision to fire a weapon from his location placed the Simmonses in danger in support of the unlawful discharge count. We cannot find error in this question and response.

20

Eighth, Hoadrea claims the prosecutor committed misconduct by claiming Hoadrea fired at the Simmonses twice. This mischaracterizes the prosecutor's comment. She did not claim that Hoadrea fired the weapon twice; rather, she claimed that Ms. Simmons told the 911 operator two separate times that Hoadrea fired a weapon. This was not an improper comment.

Ninth, Hoadrea claims that the State distorted the evidence by claiming that Ms. Simmons told the 911 operator that Hoadrea fired a .22 caliber weapon. Hoadrea claims this was misleading because Ms. Simmons told officers that he fired a rifle. Regardless of what Ms. Simmons said later, the 911 call reflects she did say Hoadrea fired a .22 caliber weapon. However, even if the State had misrepresented the call, the jury was able to listen to that exhibit, and any error would have been harmless.

Finally, Hoadrea claims the State shifted the burden of proof to Hoadrea to prove his defense. The record does not reflect this. The State asserted that Hoadrea was not credible and that the evidence did not support his claims. The State even reminded the jury that the defendant is not obligated to present any evidence.[3] Hoadrea fails to demonstrate government misconduct.

---

[3] Hoadrea also asserts counsel was ineffective for failing to intervene when the State cross-examined him. He fails to provide any citation to authority for this argument, nor does he cite to the record.

## Impermissible Comment

Hoadrea contends the judge impermissibly commented on the evidence nine times during the trial. These comments include (a) six instances of the judge sustaining the State's objections without requesting input from defense counsel, (b) the judge stating that Ms. Simmons was exhibiting signs of trauma when determining the applicability of the excited utterance hearsay exception, and (c) the judge adding language to jury instructions 8 and 12.

Under our state constitution, "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. A trial court impermissibly comments on the evidence if it provides a jury instruction that signals its personal attitude on the merits of the case. *State v. Rohleder*, 31 Wn. App. 2d 492, 496, 550 P.3d 1042, *review denied*, 3 Wn.3d 1029, 559 P.3d 492 (2024). We look to the facts and circumstances of the case when determining whether words or actions constitute a comment on the evidence. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). Once the petitioner shows that the trial court commented on the evidence, prejudice is presumed. *State v. Bogner*, 62 Wn.2d 247, 254, 382 P.2d 254 (1963). The trial court's comment is reversible error unless the record affirmatively establishes that the petitioner could not have been prejudiced by the comment.

*Objections*

During Hoadrea's testimony, the trial court sustained six of the State's objections to Hoadrea's testimony and instructed the jury to disregard without seeking input from defense counsel. Hoadrea likens these facts to *State v. Lampshire*, 74 Wn.2d 888, 891, 447 P.2d 727 (1968), and argues the trial court's conduct constituted a comment on the evidence. There, the Washington Supreme Court found that the trial court impermissibly commented on the evidence when, in response to an objection to the materiality of the defendant's testimony, the court stated, "Counsel's objection is well taken. We have been from bowel obstruction to sister . . . and I don't see the materiality, counsel." *Id*. The court concluded that this statement went beyond merely providing its reason for the ruling and that the remark was not capable of being cured by an instruction. *Id.* at 892.

Here, the trial court sustained the State's objections and instructed the jury to disregard Hoadrea's answers without editorial. Hoadrea does not indicate the court incorrectly ruled on the State's objections, nor does he identify any further comments by the trial court that demonstrate the judge's personal attitude toward the merits of the case. We conclude these instances were not judicial comments on the evidence.

*Trauma*

During the State's direct examination of Detective Schumacher, the State asked whether Ms. Simmons came across as scared of Hoadrea following the incident.

Defense counsel objected on hearsay grounds, and the State responded that the testimony

was an excited utterance. The court ruled as follows:

> And I will overrule the objection. Granted, there was some time that had
> passed but he did testify that she was nervous, shaky, fairly rattled, worked
> up, and was still exhibiting, I guess, observable signs of a trauma that had
> been committed. And I think that'll qualify under—excited utterance.

RP at 310.

Hoadrea argues the court's statement that Ms. Simmons had observable signs of

trauma when she made her statements to Detective Schumacher was an impermissible

comment on the evidence. We disagree.

An excited utterance is "[a] statement relating to a startling event or condition

made while the declarant was under the stress of excitement caused by the event or

condition." ER 803(a)(2). Here, the trial court judge's use of the word "trauma" strictly

referred to whether Ms. Simmons was under the stress of excitement caused by the

gunshot. RP at 310. The trial court's reasoning did not convey the judge's personal

attitude on the merits of the case.

*Jury Instructions*

Hoadrea also argues the trial court judge impermissibly commented on the

evidence in jury instructions 8 and 12 by adding language and including his initials. Jury

instruction 8 defined "assault." Clerk's Papers (CP) at 63. The trial court judge, in his

own handwriting, added the words "or shooting" to the instruction, resulting in the

following sentence: "A touching or striking or shooting is offensive if the touching or

24

striking would offend an ordinary person who is not unduly sensitive."   CP at 63.  The judge included his initials next to the edit.

Jury instruction 12 defined the crime of unlawful discharge of a firearm.  The trial court judge wrote in the word "defendant," resulting in the following sentence: "That on or about May 19, 2020, the defendant willfully discharged a firearm."  CP at 67.  Again, the judge included his initials next to the edit.  The trial court judge added "defendant" to the sentence because it lacked a subject.  CP at 67.

Hoadrea fails to demonstrate that these changes to the jury instructions amounted to a comment on the evidence.  These were, after all, the court's instructions on the law.  The trial court added the words "or shooting" to inform the jury that a shooting may amount to an assault under the law.  CP at 63.  The judge added "defendant" to the pertinent sentence in jury instruction 12 in order to form a complete sentence.  CP at 67.  The judge has a duty to instruct the jury on the law.  The judge's additions were clarifications on the law, not comments on the evidence.

## Fair Opportunity to Present a Defense

Hoadrea argues that the trial court violated his right to compel witnesses to appear on his behalf as guaranteed by article I, section 22 of the Washington State Constitution and the Sixth Amendment.  He contends that the trial court's refusal to grant a continuance to allow his material witness, Maria Braun, to testify caused actual and substantial prejudice.

25

A trial court's refusal to grant a continuance may violate the defendant's right to a fair trial. *State v. Williams*, 84 Wn.2d 853, 855, 529 P.2d 1088 (1975). Furthermore, denying a continuance that prevents the defendant from presenting a material witness may violate the defendant's right to compulsory process. *State v. Downing*, 151 Wn.2d 265, 274-75, 87 P.3d 1169 (2004). We review whether a denial of a continuance violates the defendant's constitutional rights on a case-by-case basis.

"In exercising discretion to grant or deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure." *Id*. at 273. A court abuses its discretion if its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The court agreed to allow Braun to testify remotely as she was ill and unable to appear in person due to her recent hospitalization. After the State rested, defense counsel requested a recess to set up the videoconference platform. When the court returned, Braun experienced connectivity issues. Hoadrea testified first, providing Braun with an opportunity to connect.

After Hoadrea's testimony, Braun was still unable to connect, so defense counsel requested another recess. After returning from the recess, Braun still couldn't connect. The court noted that it provided two hours for the defense's witness to appear, along with multiple recesses. The court believed it provided reasonable accommodations and

26

decided to move forward with the trial without Braun's testimony. The court also concluded that Braun was not an essential witness and that her anticipated testimony was already covered by the other witnesses at trial.

Hoadrea claims that Braun's testimony was critical to his defense because it would have (1) explained the Simmonses' aggression toward Hoadrea, (2) rebutted the government's negative characterizations, (3) demonstrated that the bullet landed in an opposite area from where the Simmonses were located, and (4) rebutted the government's suggestion that he attempted to hide or arm himself.

Braun did not see Hoadrea fire the shot, and her testimony that she did not hear the bullet impact the ground would not have been helpful to the jury. The aggressive relationship between the Simmonses and Hoadrea was already well-established through other evidence, and Hoadrea's response when officers arrived and attempted to contact him was of minimal relevance. Additionally, Hoadrea did not indicate at trial that Braun would provide testimony on whether Hoadrea attempted to hide or arm himself when law enforcement arrived.

Under these circumstances, we conclude that the court did not abuse its discretion when it declined to allow the case to be further continued for Braun's testimony. Even if Braun had testified, Hoadrea cannot show a reasonable probability that the testimony would change the outcome of the trial.

## Element Missing from To-Convict Instructions

Hoadrea contends that the trial court erred by failing to include unlawful use of force as an essential element of assault in the second degree in jury instructions 6 and 7. He argues that because he asserted defense of property as a defense at trial, the lawfulness of the force he used to defend his property became an essential element of the crimes.

The usual test for jury instructions is whether they correctly state the law, are not misleading, and permit counsel to argue their theory of the case. *State v. Brooks*, 142 Wn. App. 842, 847, 176 P.3d 549 (2008). A trial court's failure to instruct the jury on each element of a charged crime amounts to a constitutional error. *See State v. Cardenas-Flores*, 189 Wn.2d 243, 267, 401 P.3d 19 (2017).

Jury instruction 6 reads:

> To convict the defendant of the crime of Assault in the Second Degree as charged in Count 1, each of the following elements must be proved beyond a reasonable doubt:
>
> 1. That on or about May 19, 2020, the defendant assaulted Jack Simmons with a deadly weapon; and
> 2. That this act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 61.

Instruction 7 was identical, with the exception of replacing "Mr. Simmons" with "Ms. Simmons" and "count 1" with "count 2." CP at 62.

Although jury instruction 6 and 7 did not directly address the issue of lawful force, instruction 10 did. In relevant part, instruction 10 told the jury:

> The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

CP at 65.

Instruction 10 expressly placed the burden on the State to prove that the defendant's use of force was unlawful. We therefore find neither error nor prejudice in the court's instructions.

## Predicate for Felony Violation of a Court Order

Hoadrea contends that his conviction for felony violation of a court order and the accompanying firearm enhancement must be vacated. He argues the jury may have relied on his conviction for assault in the second degree as the predicate offense for the violation of a court order charge, which is prohibited by Washington law.

Under WPIC 36.51.02,[4] for the jury to convict a defendant of felony violation of a court order, it must find, among other things, that the defendant's

---

[4] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.51.02 at 714-15 (5d. ed. 2021) (WPIC).

conduct was an assault that did not amount to assault in the second degree, or was reckless and created a substantial risk of death or serious physical injury to another person. Hoadrea correctly argues that if the jury convicted him of felony violation of a court order based on assault in the second degree, his conviction cannot stand.

Such was the case in *State v. Azpitarte*, 140 Wn.2d 138, 995 P.2d 31 (2000). There, the defendant was charged with assault in the second degree, unlawful imprisonment, and felony violation of a court order. During closing arguments, the State invited the jury to rely on either a separate act of assault in the fourth degree or assault in the second degree to convict the defendant of the no-contact order violation. The court vacated the defendant's conviction for felony violation of a no-contact order because it was unclear whether the jury relied on the second or assault in the fourth degree.

While *Azpitarte* is helpful, we find *State v. Olsen*, 187 Wn. App. 149, 348 P.3d 816 (2015), to be more on point. In *Olsen*, this court held that a conviction for assault in the second degree did not preclude a conviction for felony violation of a court order where the State relied on reckless conduct as the predicate act. *Id*. at 158. There, the jury instructions required the State to prove that the violation of a court order charge was based on "conduct which was reckless and which created a substantial risk of death or serious physical injury to another." *Id.* at 154. The "instruction did not allow the jury to consider second degree assault to support the conviction." *Id*. We concluded the State relied on the reckless conduct option to elevate the violation of the court order to a

felony, and it was on this basis the jury rendered its verdict. *Id*. at 157-58. We

accordingly allowed Olsen's conviction for felony violation of a no-contact order to

stand.

In the present case, the jury was instructed, in part:

> To convict the defendant of the crime of Violation of a Court Order
> as charged in Count 6, each of the following five elements of the crime
> must be proved beyond a reasonable doubt:
>
> . . . .
>
>     a. The defendant's conduct was an assault that did not amount
>        to assault in the second degree, or
>
>     b. The defendant's conduct was reckless and created a
>        substantial risk of death or serious physical injury to another
>        person;

CP at 75. The jury was also instructed on the definition of recklessness:

> A person is reckless or acts recklessly when he or she knows of and
> disregards a substantial risk that death or serious physical injury to another
> person may occur and this disregard is a gross deviation from conduct that
> a reasonable person would exercise in the same situation.

CP at 76.

Despite the language instructing the jury it could not rely on assault in the second

degree for this charge, Hoadrea contends that the government argued just that.

Specifically, Hoadrea points to the following comment by the prosecutor during their

opening statement:

> And that's—going to be the crux of what you're going to have to decide
> here is—is—if the assault occurred, and if it was—if there was assault in

> violation of a protection order—that's the story you're going to hear
> through Jack . . .

RP at 207. We disagree with Hoadrea's characterization that the State invited the jury to

rely on assault in the second degree as a predicate for the court order violation. While the

State initially seemed to suggest during opening statement that the jury could rely on

"the assault," it corrected itself to refer to "an assault," not specifically assault in the

second degree. RP at 207. The prosecutor may have more accurately referred to "an

assault" as "a warning shot" as the reckless act it was relying on, but their opening

statement was not error. RP at 207.

This was born out in closing argument where the State, after being interrupted by

an unrelated issue, said:

> I know I was talking about the violation of court order, and specifically I–I
> believe I was talking about the conduct being reckless and creating a
> substantial risk of death or serious physical injury. And that is exactly what
> happened here when a bullet fired off in the direction of Ms. Simmons.
> There's so many things that can go wrong even if you're intending it just to
> be a warning shot and not actually hit her but (inaudible) her, your aim
> could be off, she could move, it could ricochet. That in itself creates a
> substantial risk of serious physical injury to another person.

RP at 407-08.

The State did not argue that assault in the second degree could serve as the

predicate offense.

We conclude the jury instruction, coupled with the State's closing

argument, properly directed the jury to consider whether Hoadrea's act of firing

32

the warning shot was conduct that was reckless and created a substantial risk of death or serious physical injury to Ms. Simmons.

## Merger

Like Hoadrea's preceding argument, he contends that his conviction for violation of a court order triggers the merger doctrine because it was based on his separate conviction for assault in the second degree. We have already concluded the jury relied on the recklessness prong to convict Hoadrea of violating a court order. However, Hoadrea also argues his convictions for assault in the second degree and violation of a court order should merge because they are both based on his single act of firing a warning shot toward Ms. Simmons.

The merger doctrine requires us to evaluate whether the legislature intended multiple crimes to merge into a single crime for punishment purposes. *State v. Vladovic*, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983). When a criminal defendant's conduct serves as the basis for the conviction of a degree of one offense, and that conduct is separately criminalized by the legislature, "we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *State v. Freeman*, 153 Wn.2d 765, 773, 108 P.3d 753 (2005).

In support of his argument that his convictions for assault in the second degree and felony violation of a court order should merge, Hoadrea relies almost exclusively on *State v. Leming*, 133 Wn. App. 875, 890, 138 P.3d 1095 (2006), even though the *Leming* court

concluded merger did not apply in that case. In *Leming*, the State argued that the assault in the second degree charge was based on a different instance of conduct than the assault it was relying on for violation of a court order. *Id.* at 891. The *Leming* court agreed that the conduct giving rise to each offense was separate, and so the merger doctrine was not implicated. *Id.* at 887. Hoadrea argues that in his case, unlike *Leming*, the charges for assault in the second degree and felony violation of a court order were both based on a single instance of conduct and therefore merger applies.

Hoadrea's reliance on *Leming* is misplaced. In 2017, this court decided *State v. Novikoff*, 1 Wn. App. 2d 166, 404 P.3d 513 (2017). Novikoff was convicted of assault in the fourth degree and a felony protection order violation based on a single act of assaultive behavior, suggesting that merger might apply. *Id*. at 173. When we looked at whether the legislature intended separate punishments for these crimes, even where the same act served as the basis for both, we noted that the legislature already answered the question, both while enacting the Domestic Violence Protection Act under chapter 26.50 RCW and in its amendment shortly after the *Leming* decision. *Id*. We concluded the legislature clearly expressed its intention to punish assault separately from violations under RCW 26.50 and, therefore, the two offenses did not merge. *Id*. Hoadrea does not address *Novikoff* or provide any reason why we should depart from its holding. We conclude his convictions do not merge.

Double Jeopardy

Hoadrea contends he was subjected to double jeopardy when he was convicted for assault in the second degree and harassment when he fired a gun in the direction of the Simmonses and told them the next shot would be closer. While Hoadrea combines these two acts into one, we see them as two distinct acts.

The United States Constitution and the Washington State Constitution protect criminal defendants from being punished twice for the same offense. *State v. Fuller*, 185 Wn.2d 30, 33, 367 P.3d 1057 (2016); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. However, double jeopardy does not apply to the imposition of separate punishments for different offenses. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 194, 94 P.3d 952 (2004). If one crime is over before another crime is committed, and the State uses different evidence to prove each crime, then the two crimes are not the "'same offense'" and do not trigger the defendant's double jeopardy rights. *Id.* at 194 (quoting *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991)).

The court instructed the jury that assault in the second degree is the use of a deadly weapon and that the "intentional touching or striking or shooting of another person that is harmful or offensive regardless of whether any physical injury is done to the person." CP at 61-63. The jury was also instructed that assault is an "act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not

actually intend to inflict bodily injury." CP at 63. The court instructed the jury that harassment is a threat to cause immediate or future bodily injury or maliciously do any act that was intended to cause substantial harm to physical health or safety. The jury was also instructed that the defendant's words or conduct must have placed the victim in reasonable fear that the threat would be carried out.

Each crime contains an element that the other does not. Assault in the second degree requires the use of a deadly weapon, which is not an element of felony harassment. Felony harassment requires a threat that places the victim in reasonable fear, which is not an element of second degree assault. Here, Hoadrea fails to demonstrate that the State relied on Hoadrea's act of shooting the firearm to prove both assault in the second degree and harassment. During closing argument, the State relied on Hoadrea's words for the harassment charge. Specifically, the State relied on Hoadrea's threat after firing the gunshot that the next shot would be closer. As to the assault charge, the State relied on Hoadrea's firing of the weapon, not his words. These were two separate acts, and we conclude Hoadrea's convictions do not violate double jeopardy.[5]

---

[5] Although Hoadrea cites to the unpublished case of *State v. Nakamura*, for support, the case does not assist him. No. 57050-5-II (Wash. Ct. App. June 13, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2057050-5-II%20Unpublished%20Opinion.pdf. In *Nakamura*, Division Two of this court held that the defendant's double jeopardy rights were violated because the State relied on the defendant's firing of a gun for both a felony harassment count and assault in the second degree count. *Id.* at 11, 14. The court explicitly stated that two offenses are not the same in law in the abstract but were the same in law as proved by the state. *Id.* at 14. The court based its decision on the State's closing argument, which invited the jury to find the

Insufficient Evidence

Hoadrea contends there was insufficient evidence presented at trial to support the harassment and assault convictions relating to Mr. Simmons and the assault conviction relating to Ms. Simmons. The State contends that Hoadrea is barred from raising these arguments in his petition because they were addressed on direct appeal. We agree with the State that Hoadrea is barred from challenging the harassment conviction based on sufficiency of the evidence because he raised the issue on direct appeal. However, Hoadrea did not previously challenge the sufficiency of the evidence of his assault convictions, so we address them here.

When asserting insufficient evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn therefrom. *State v. Roberts*, 5 Wn.3d 222, 237, 572 P.3d 1191 (2025). We draw these inferences in the State's favor. *Id*. "The conviction will be upheld if any rational fact finder could have found the essential elements beyond a reasonable doubt." *Id*. Circumstantial evidence and direct evidence are equally reliable in our analysis.

Hoadrea contends that Mr. Simmons's testimony established that the gunshot did not place him in imminent fear and reasonable apprehension of bodily injury and that no

---

defendant's firing of the weapon constituted assault and "would be indirectly threatening somebody." *Id.* at 11.

rational finder of fact could have concluded this element was satisfied beyond a reasonable doubt. Specifically, Hoadrea points to Mr. Simmons's testimony that he was not scared when Hoadrea fired the weapon because he had been shot at before.

On direct appeal, we concluded that, with regard to the harassment charge, the jury could have inferred that Mr. Simmons was placed in reasonable fear by Hoadrea's threat because (1) Hoadrea fired a gunshot in his direction, (2) Mr. Simmons began carrying his gun after the shooting, (3) he may have been reluctant to admit fear based on his background as a rancher, and (4) he referred to himself as a "sitting duck" during the shooting. *Hoadrea*, slip op. at 20. Similarly, these reasons are sufficient to demonstrate that a reasonable juror could find that Hoadrea's gunshot placed Mr. Simmons in imminent fear and reasonable apprehension of bodily injury beyond a reasonable doubt.

As to the assault committed against Ms. Simmons, Hoadrea argues there was insufficient evidence to conclude that she was the target of the gunshot. Hoadrea primarily relies on Mr. Simmons's testimony that immediately after the gunshot, Ms. Simmons said Hoadrea shot at Mr. Simmons, not herself.

Hoadrea fails to establish that no reasonable juror could find that Hoadrea intended to create apprehension and fear of bodily injury in Ms. Simmons. The jury may have reasonably inferred that Hoadrea intended to cause Ms. Simmons fear by firing a gunshot, even if the impact was closer to Mr. Simmons. Hoadrea yelled at Ms. Simmons

before the gunshot, and Ms. Simmons told Mr. Simmons that she was scared when the shot was fired.

Remaining Ineffective Assistance of Counsel Claims

*Plea Offer*

Hoadrea contends that defense counsel performed deficiently by advising him not to plead guilty and failing to advise him of the plea offer and its consequences. He asserts that counsel's deficient performance caused prejudice because he was convicted of four more crimes and received a sentence three times longer than the plea offer.

Defendants have the right to effective assistance of counsel in the plea bargaining process. *State v. Estes*, 188 Wn.2d 450, 464, 395 P.3d 1045 (2017). Counsel must reasonably assess the evidence against the defendant, along with the likelihood of a conviction at trial, in order to allow the defendant to make a meaningful decision on whether to plead guilty. *State v. A.N.J.*, 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010). The defendant must show that, absent ineffective advice of counsel, there is a reasonable probability that the parties would have presented a plea offer to the court. *State v. Drath*, 7 Wn. App. 2d 255, 267, 431 P.3d 1098 (2018).

The State presented Hoadrea, through his attorney, a plea offer to one count of assault in the second degree and one count of assault in violation of a protection/no-contact order with a firearm enhancement. The agreed recommendation would have been for 32 months confinement. Assuming the truth of Hoadrea's allegations, he claims that

he was prejudiced by defense counsel's failure to explain the consequences of the plea agreement because it caused him to "overvalue his position." PRP at 28. This argument is vague and unconvincing. Further, Hoadrea does not provide any evidence that he would have accepted the plea offer had his attorney explained the plea and Hoadrea's case differently.

*Hearsay*

Hoadrea contends trial counsel was ineffective for failing to object to eight instances of hearsay evidence. Hoadrea asserted an ineffective assistance of counsel claim on direct appeal based on trial counsel's failure to object to hearsay evidence, and as previously explained, he is barred from raising this claim again.

## Cumulative Error

Hoadrea contends that even if the alleged errors do not individually warrant reversal of his convictions, the errors considered together require reversal under the cumulative error doctrine.

Under the cumulative error doctrine, we determine whether the errors that occurred during trial combine to deny the defendant a fair trial, even if the errors are individually harmless. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014). The cumulative effect of the errors requires reversal of the convictions if the defendant demonstrates that the totality of the circumstances substantially prejudiced the

defendant and denied the defendant a fair trial. *Id*. Prejudice is not present if the evidence is overwhelmingly against the defendant. *Id*. at 691.

This case presented few errors. None of them are significant. We conclude Hoadrea does not demonstrate he was substantially prejudiced or denied a fair trial.

CONCLUSION

Hoadrea fails to demonstrate that he is entitled to relief. Accordingly, we deny his PRP.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____
Cooney, A.C.J.

_____
Lawrence-Berrey, J.